HIP HOP BEVERAGE CORP., a Nevada Corporation; Calvin Ross, an individual; James L. Robinson, an individual, Plaintiffs,

v.

RIC REPRESENTACOES IMPORTACAO E COMERCIO LTDA., a Brazilian limited liability company; and North American Beverage Company, a Florida Corporation, Defendants.

No. CV 02–5183DT(MEX).

United States District Court, C.D. California.

Oct. 20, 2003.

Eric F. Edmunds, Jr., J. Anthony Vittal, John J. Waller, Jr., Finestone & Richter, Los Angeles, CA, for Plaintiffs/Counter Defendants.

Sanford M. Passman, Sanford M. Passman Law Offices, Los Angeles, CA, for Defendants/Third–Party Plaintiffs/Counter Claimant.

Kristin L. Holland, Steven M. Goldberg, Katten Muchin Zavis Rosenman, Los Angeles, CA, for Third–Party Defendant.

ORDER **GRANTING** DEFENDANT NORTH AMERICAN BEVERAGE COMPANY'S MOTION FOR LEAVE TO FILE COUNTERCLAIM AND THIRD PARTY COMPLAINT

TEVRIZIAN, District Judge.

## I. BACKGROUND

### A. *Factual Summary*

Plaintiffs Hip Hop Beverage Corporation ("Hip Hop"), Calvin Ross ("Ross") and James L. Robinson ("Robinson") (collectively, "Plaintiffs") bring this action against Defendants RIC Representacoes Importacao e Comercio Ltda. ("Defendant RIC") and North American Beverage Company ("Defendant North American") (collectively, "Defendants") for: (1) trademark infringement, pursuant to § 43(a) of the Lanham Act; (2) common law unfair competition; and (3) statutory unfair competition, pursuant to California Business and Professions Code § 17200.

---

Presently before this Court is Defendant North American's Motion for Leave of the Court to File Counter Claim.

The following facts are alleged in Plaintiffs' First Amended Complaint for Damages and Injunctive Relief ("FAC"):

Plaintiff Hip Hop, a Nevada corporation, is a creator and distributor of consumer products, including the non-alcoholic, fruit-flavored, beverage product bearing the "Pit Bull Energy Drink" trademark that is at issue herein. (FAC, ¶ 3). Plaintiff Hip Hop is dually qualified and doing business in the County of Los Angeles, State of California, with its principal place of business in Lake View Terrace, California. (*Id.*). Plaintiff Hip Hop is a closely held corporation engaged in both intrastate and interstate commerce. (*Id.*).

Plaintiff Ross is an adult individual residing in Los Angeles County, California. (*Id.*, ¶ 4). Plaintiff Ross is an officer, director and shareholder of Plaintiff Hip Hop and is one of the former owners of the "Pit Bull Energy Drink" trademark. (*Id.*).

Plaintiff Robinson is an adult individual residing Los Angeles County, California. (*Id.*, ¶ 5). Plaintiff Robinson is an officer, director and shareholder of Plaintiff Hip Hop and is one of the former owners of the "Pit Bull Energy Drink" trademark. (*Id.*).

Plaintiffs are informed and believe, and on that basis allege, that Defendant RIC is a limited liability company organized and existing under the laws of the Federal Republic of Brazil, with its principal place of business located in Recife, Pernambuco, Brazil. (*Id.*, ¶ 6). Plaintiffs are further informed and believe, and on that basis allege, that on or about August 21, 2000, Defendant RIC first attempted to register "Pitbull" as a trademark for an energy drink with the Patent and Trademark Office ("USPTO") of the United States Department of Commerce (Application Serial No. 76–113989). (*Id.*). Defendant RIC's application, having been contested by Plaintiffs on the grounds that Defendant RIC's proposed "Pitbull" trademark is confusingly similar to Plaintiffs' pre-existing "Pit Bull Energy Drink" trademark,

remains pending and unapproved as of this date. (*Id.*).

Plaintiffs are informed and believe, and on that basis allege, that Defendant North American is a corporation organized and existing under the laws of the State of Florida, with its principal place of business located in Dade County, Florida. (*Id.*, ¶ 7). Plaintiffs are further informed and believe, and on that basis allege, that Defendant North American purports to be the successor to Defendant RIC. (*Id.*). In addition, Plaintiffs are informed and believe, and on that basis allege, that Defendant North American is currently distributing an energy drink in California under the "Pitbull" mark. (*Id.*).

Plaintiffs are informed and believe, and on that basis allege, that, at all times relevant hereto, each of the Defendants herein was the agent and/or employee of each of the remaining Defendants and, in doing the things herein alleged, was acting within the scope and course of such agency and/or employment and with the knowledge, consent and ratification of and by each of the remaining Defendants. (*Id.*, ¶ 8).

In mid–1995, Plaintiff Ross, after a considerable expenditure of time and effort, developed a highly desirable and valuable formula for a non-alcoholic, fruit-flavored, energy beverage. (*Id.*, ¶ 9). Because of his long-standing interest in raising pit bull dogs, and believing the name to be both suggestive of the jolt provided by his new beverage and easy to remember, Plaintiff Ross adopted the "Pit Bull Energy Drink™" name, together with a stylized image of a pit bull that he had raised, as his trademark, and named his newly created energy juice beverage "Pit Bull Energy Drink™." (*Id.*).

Shortly after Plaintiff Ross developed the formula for "Pit Bull Energy Drink™," Plaintiff Ross, together with his business associates, Plaintiff Robinson and Bob Solomon, began the process of producing, distributing and marketing "Pit Bull Energy Drink™." (*Id.*, ¶ 10). At the outset, Plaintiffs Ross and Robinson and Mr. Solomon received distribution and marketing assistance from Giovanni Luciano and Star Sign Herbal Products ("Star Sign"), a company owned by Luciano, his wife, his father-in-law

and Plaintiff Ross. (*Id.*). Since that time, Plaintiffs have used the "Pit Bull Energy Drink" trademark to identify and promote their products, including "Pit Bull Energy Drink ™," and to distinguish Plaintiffs' products from those offered by others. (*Id.*, ¶ 11).

In July 1995, Plaintiffs Ross and Robinson, and Mr. Solomon, arranged for the production of "Pit Bull Energy Drink ™" through Golden Harvest Food Corp., a contract bottler located in the Philippine Republic. (*Id.*, ¶ 12). The initial order for "Pit Bull Energy Drink ™" was placed by Plaintiffs Ross and Robinson and Mr. Solomon through Laguna Bay International Corp. ("Laguna Bay"), a New York corporation in which Mr. Luciano and Star Sign had an ownership interest. (*Id.*). The initial order was for 540 cartons (24 individual 350 ml units per carton) and was delivered to Laguna Bay in the Fall of 1995. (*Id.*). Laguna Bay turned the shipment over to Star Sign, which assisted Plaintiffs Ross and Robinson and Mr. Solomon in the distribution of the first commercially produced batch of "Pit Bull Energy Drink ™." (*Id.*). At that time, Plaintiffs Ross and Robinson, Mr. Solomon, Mr. Luciano and Star Sign commenced their efforts to market "Pit Bull Energy Drink ™." (*Id.*).

The initial marketing of "Pit Bull Energy Drink ™" focused on the Arizona, Nevada and Southern California markets, but soon expanded to additional areas as "Pit Bull Energy Drink ™" became more widely known and consumer demand for it increased. (*Id.*, ¶ 13). Since that time, the areas in which substantial sales of "Pit Bull Energy Drink ™" have been made include the states of Arizona, California, Connecticut, Florida, Illinois, Indiana, Michigan, Nevada, New Jersey, New York and Texas. (*Id.*). In addition, "Pit Bull Energy Drink ™" is being carried and co-marketed by several national retailers, including Safeway, Inc., which Plaintiffs are informed and believe, and on that basis allege, now distributes "Pit Bull Energy Drink ™" throughout its national network of stores, including its Von's and Pavilions stores. (*Id.*). As sales of "Pit Bull Energy Drink ™" have increased, the amount and scope of the marketing of "Pit

Bull Energy Drink ™" has been increased and expanded. (*Id.*, ¶ 6). Plaintiffs' advertising and distribution of "Pit Bull Energy Drink ™" is now nationwide. (*Id.*).

In furtherance of Plaintiffs' goal to market various "Pit Bull" products, including "Pit Bull Energy Drink ™," throughout the United States, Plaintiffs now sponsor the Indy Racing League (the "IRL") and also have sponsored IRL racing teams that prominently display the "Pit Bull Energy Drink ™" trademark on their racing cars, team equipment and in their related promotional activities at each of the races in which they participate throughout the United States. (*Id.*, ¶ 15). At each of the IRL's races, including the Indianapolis 500, Plaintiffs actively advertise "Pit Bull" products, including "Pit Bull Energy Drink ™," and distribute advertising brochures for "Pit Bull" products, including promotional samples of "Pit Bull Energy Drink ™." (*Id.*).

To increase consumer awareness of "Pit Bull" products, including "Pit Bull Energy Drink ™," in early 2001, Plaintiff Hip Hop established a website for "Pit Bull" products. (*Id.*, ¶ 16). The internet address for that website is "www.pitbullenergydrink.com." (*Id.*). Among other things, that website describes Plaintiff Hip Hop and the various "Pit Bull" products, including "Pit Bull Energy Drink ™," that Plaintiff Hip Hop distributes. (*Id.*). Hip hop music plays in the background while the website is being viewed. (*Id.*).

As sales of "Pit Bull Energy Drink ™" increased, Plaintiffs Ross and Robinson and Mr. Solomon began ordering "Pit Bull Energy Drink ™" from their contract-bottler in larger quantities and on a more frequent basis. (*Id.*, ¶ 17). Since the Fall of 1995, sales of "Pit Bull Energy Drink ™" have been substantial and continuous. (*Id.*, ¶ 18). Between the Fall of 1995, and August 2000, Plaintiffs sold more than 100,000 individual units of "Pit Bull Energy Drink ™." (*Id.*). Plaintiffs' sales of "Pit Bull Energy Drink ™" now exceed 10,000 cases per month. (*Id.*).

On January 10, 2001, Plaintiffs Ross and Robinson and Curtis Shaw incorporated Plaintiff Hip Hop as the vehicle through which Plaintiffs thereafter would market, dis-

tribute and sell "Pit Bull" products, including "Pit Bull Energy Drink ™." (*Id.*, ¶ 19). As a result of Plaintiffs' substantial advertising and promotional efforts, Plaintiff Hip Hop has become widely known to consumers as the source of products bearing the "Pit Bull" trademark, and "Pit Bull Energy Drink ™" is now widely recognized by consumers as being associated with Plaintiff Hip Hop and has become synonymous with the goodwill and reputation of Plaintiff Hip Hop. (*Id.*, ¶ 20).

On October 17, 2000, Plaintiffs Ross and Robinson and Mr. Solomon filed an application with the USPTO to register the "Pit Bull" trademark in connection with their energy drink (Application Serial No. 76–148009). (*Id.*, ¶ 21). Plaintiffs Ross and Robinson and Mr. Solomon subsequently assigned their respective rights and ownership interests in the "Pit Bull Energy Drink" trademark, and the formula for the Pit Bull Energy Drink, to Plaintiff Hip Hop, which remains the exclusive owner of that mark and formula today. (*Id.*, ¶ 22).

### 1. First Claim for Relief: Trademark Infringement; Violation of Section 43(a) of the Lanham Act

In approximately May or June 2001, shortly after Plaintiff Hip Hop established its website at "www.pitbullenergydrink.com," Marco Arce, the President of Defendant North American, first contacted Plaintiff Ross. (*Id.*, ¶ 24). At that time, and in a number of subsequent telephone conversations that Plaintiff Ross had with Mr. Arce during the Summer of 2001, they discussed Plaintiff Hip Hop's prior and existing use of the "Pit Bull Energy Drink" trademark and Plaintiff Hip Hop's establishment of its website. (*Id.*). Mr. Arce informed Plaintiff Ross that Defendant North American was about to start selling an energy drink in the United States under the name "Pitbull," together with a depicted image of a pit bull. (*Id.*). Mr. Arce also inquired as to whether Plaintiff Hip Hop might be willing to sell Defendant North American the rights to the "Pit Bull Energy Drink" trademark and the "www.pitbullenergydrink.com" Internet address. (*Id.*). Mr. Arce stated that he was concerned about the confusion that might result if both companies marketed energy drinks using similar marks for their respective energy drinks and related products. (*Id.*). Plaintiff Ross explained that Plaintiffs had been using the "Pit Bull Energy Drink" trademark for many years and were not interested in selling the rights to Plaintiffs' trademark or to their Internet address. (*Id.*).

In late October 2001, counsel for Plaintiffs and counsel for Defendants first communicated regarding the confusion being created by Defendants' application for, and use of, a confusing similar trademark—specifically, Defendants' use of the name "Pitbull," together with an image of a pit bull—to identify and market their competing fruit-flavored energy drink. (*Id.*, ¶ 25).

On or about January 22, 2002, counsel for Plaintiffs sent a cease and desist letter to counsel for Defendants demanding that Defendants cease and desist from using the name "Pitbull," together with an image of a pit bull, to identify and market their competing fruit-flavored energy drink. (*Id.*, ¶ 26). Despite that demand, and the provision to Defendants of documentation evidencing Plaintiffs' long-standing use of the "Pit Bull Energy Drink" trademark to market Plaintiffs' energy drink, Defendants have refused to discontinue their trademark infringement. (*Id.*).

Since at least May 2001, when Plaintiff Ross and Mr. Arce of Defendant North American first communicated regarding Plaintiffs' long-term use of the "Pit Bull Energy Drink" trademark prior to Defendant RIC's filing of its application to establish "Pitbull" as its trademark, Defendants have been aware of the goodwill represented by the "Pit Bull Energy Drink" trademark as identifying the products of Plaintiff Hip Hop, distinguishing Plaintiff Hip Hop's products from those of others and symbolizing products of the highest quality. (*Id.*, ¶ 27).

Notwithstanding Defendants' knowledge of Plaintiffs' senior rights to use the "Pit Bull Energy Drink" trademark since at least late May 2001, Defendants have willfully and intentionally used a mark that is confusingly similar to Plaintiff Hip Hop's "Pit Bull Ener-

gy Drink" trademark to market their competing energy drink. (*Id.*, ¶ 28).

Defendants' continued use of their confusingly similar mark after May 2001 was intentional and deliberate and was designed to trade upon, and take unfair advantage of, the goodwill and reputation of Plaintiffs' "Pit Bull Energy Drink" trademark. (*Id.*, ¶ 29). For example, in marketing "Pitbull" products, Defendants initially established "www.pitbullenergydrink.net" as their Internet address. (*Id.*). Defendants chose that Internet address because they recognized that Plaintiffs had established "www.pitbullenergydrink.com" as the Internet address for "Pit Bull Energy Drink™" products. (*Id.*) Defendants not only substantially copied Plaintiffs' Internet address, they also copied Plaintiffs' use of hip hop music as the background music for the "Pit Bull Energy Drink™" website. (*Id.*).

Defendants' continued manufacture, marketing, distribution and sale of their competing energy drink under their confusingly similar "Pitbull" mark infringes upon Plaintiffs' senior rights to the "Pit Bull Energy Drink" trademark. (*Id.*, ¶ 30). As a result of Defendants' continued use of the "Pitbull" mark on various products, including their competing energy drink, consumers and retailers are likely to confuse, and will likely continue to confuse, products offered by Defendants with products offered by Plaintiff Hip Hop. (*Id.*, ¶ 31).

Such confusion has, and continues to exist. (*Id.*, ¶ 32). Plaintiffs have received numerous calls and inquiries from actual and prospective distributors of "Pit Bull Energy Drink™" inquiring about the relationship, if any, between Plaintiffs' "Pit Bull Energy Drink™" and Defendants' Pitbull energy drink. (*Id.*). Plaintiffs have also encountered wholesalers and retailers who have expressed their confusion regarding the difference between Plaintiffs' "Pit Bull Energy Drink™" and Defendants' Pitbull energy drink, and were concerned about customer confusion arising from the confusing similarity between Plaintiffs' "Pit Bull Energy Drink™" and Defendants' Pitbull energy drink. (*Id.*). Plaintiffs are informed and believe, and on that basis allege, that such

confusion has caused Plaintiffs to lose sales to Defendants and has increased Plaintiffs' costs to market "Pit Bull Energy Drink™" by requiring Plaintiffs to spend time and resources explaining (a) the lack of any connection between Plaintiffs' "Pit Bull Energy Drink™" and Defendants' Pitbull energy drink and (b) Plaintiffs' senior right to use the "Pit Bull Energy Drink" trademark. (*Id.*).

Defendants' acts constitute trademark infringement and unfair competition in violation of Section 43(a) of the Lanham Act. (*Id.*, ¶ 33). By reason of Defendants' conduct, Plaintiffs have suffered and will continue to suffer damage to their business, reputation and goodwill. (*Id.*, ¶ 34). Plaintiffs have not as yet ascertained the precise amount of said damages, but believe the amount of said damages to be substantial. (*Id.*). The precise amount of Plaintiffs' damages will be established according to proof at the time of trial. (*Id.*).

By reason of Defendants' conduct, Defendants have caused and, unless enjoined by the Court, will continue to cause immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law, and for which Plaintiffs are entitled to injunctive relief. (*Id.*, ¶ 35).

### 2. Second Claim for Relief: Common Law Unfair Competition

With full knowledge of Plaintiffs' trademark, Defendants have continued to manufacture, distribute and sell in interstate commerce, products bearing the "Pitbull" mark that compete with Plaintiff's "Pit Bull Energy Drink™" products. (*Id.*, ¶ 37). The acts of Defendants constitute unfair competition and infringe Plaintiffs' common law rights in their "Pit Bull Energy Drink" trademark. (*Id.*, ¶ 38).

Plaintiffs are informed and believe, and on that basis allege, that Defendants' willful and deliberate continuing use of their confusingly similar "Pitbull" mark has been maintained for the purpose of deceiving customers regarding the source of the "Pitbull" products. (*Id.*, ¶ 39). As a result of such conduct, Defendants have profited and, unless such

conduct is enjoined by this Court, will continue to profit by misappropriating the time, energy and money that Plaintiffs have invested in establishing the "Pit Bull Energy Drink" trademark and Plaintiff Hip Hop's associated reputation and good will. (*Id.*, ¶ 40).

As a result of such conduct, Plaintiffs have suffered and, unless such acts and practices are enjoined by this Court, will continue to suffer damages to Plaintiff Hip Hop's business, reputation and goodwill. (*Id.*, ¶ 41). Also as a result of such conduct, Defendant's have caused, and unless enjoined by this Court, will continue to cause consumer confusion as to the source, origin, sponsorship and/or affiliation of Defendants' products and their relationship to Plaintiffs and Plaintiffs' products. (*Id.*, ¶ 42). Also as a result of Defendants' conduct, Plaintiffs have suffered and, unless enjoined by this Court, will continue to suffer injury and damages for which Plaintiffs are entitled to relief. (*Id.*, ¶ 43).

By reason of Defendants' conduct, Defendants have caused and, unless such conduct is enjoined by this Court, will continue to cause immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law. (*Id.*, ¶ 44).

### 3. Third Claim for Relief: Statutory Unfair Competition—California Business & Professions Code § 17200

Defendants, in engaging in the conduct alleged above, including, but not limited to, their acts of trademark infringement, trading upon the goodwill and reputation of Plaintiffs' "Pit Bull Energy Drink" trademark, and duplicating aspects of Plaintiff's "Pit Bull Energy Drink ™" products website, committed acts of unfair competition as defined by Section 17200 of the California Business and Professions Code (" § 17200"). (*Id.*, ¶ 46). The acts and practices described above violate § 17200. (*Id.*, ¶ 47).

As a direct and proximate result of the aforementioned acts of unfair competition, Defendants have received, and continue to hold, ill-gotten gains resulting from their making sales of their confusingly branded products, including sales of their Pitbull Energy Drink, that would otherwise have been made by Plaintiffs and, as a result, the proceeds of those sales belong to Plaintiffs and must be accounted for, and disgorged to, Plaintiffs. (*Id.*, ¶ 48).

### B. *Procedural Summary*

On June 28, 2002, Plaintiffs filed their Complaint for Damages and Injunctive Relief and Demand for Jury Trial.

On January 12, 2003, this Court entered an Order to Show Cause Re Dismissal for Lack of Prosecution.

On January 27, 2003, Plaintiffs filed their First Amended Complaint for Damages and Injunctive Relief and Demand for Jury Trial.

On January 29, 2003, this Court entered an Order Withdrawing Order to Show Cause.

On February 20, 2003, Defendant North American Beverage Company filed its Answer to Plaintiff's Unverified First Amended Complaint.

On April 10, 2003, Plaintiffs filed a Request to Enter Default of Defendant RIC Representacoes Importacao E Comercio Ltda.

On April 15, 2003, Plaintiffs filed a Request to Enter Default of Defendant RIC Representacoes Importacao E Comercio Ltda.

On April 16, 2003, Default by Clerk as to Defendant RIC was entered pursuant to Fed.R.Civ.P. 55(a).

On June 16, 2003, a Scheduling Conference occurred. The Discovery Cutoff date is set for December 12, 2003, the Pretrial Conference date is set for March 8, 2004, and the Trial date is set for April 13, 2004.

On September 16, 2003, Defendant North American Beverage Company filed a Notice of Motion and Motion for Leave of the Court to File Counter Claim ("Motion for Leave"), which is currently before this Court.

On October 6, 2003, Plaintiffs' filed their Opposition To Defendant North American Beverage Company's Motion For Leave Of Court To File Counterclaim.

## II. DISCUSSION

### A. *Standard*

Federal Rule of Civil Procedure 15(a) permits a party to amend a previously amended pleading "only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a). In accordance with the Federal Rules' liberal pleadings standards, "leave [to amend] shall be freely given when justice so requires." *Id.*

■ Federal Rule of Civil Procedure 13(f) specifically governs the procedure for amending omitted counterclaims. It provides that a court may grant leave to amend when a pleader "fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires." Fed.R.Civ.P. 13(f). While Rule 13(f) adds additional factors which a court may consider, both the amendment of pleadings and the addition of counterclaims have in common that they are permitted "when justice so requires." Thus, courts presented with motions for leave to amend a pleading to add an omitted counterclaim generally "adhere[ ] to the liberal amendment policy of Rule 15" in deciding whether to grant the requested leave. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d § 1430* at 227 (2d ed.1990); *see Intel Corp. v. Hyundai Elec. Am., Inc.,* 692 F.Supp. 1113, 1117 (C.D.Cal. 1987) (in the patent infringement context, finding that identical reasons supported both addition of counterclaims and amendment of pleading). Though the decision to grant or deny a motion for leave to amend is governed by the district court's discretion, the general rule is that amendment of pleadings is to be permitted unless the opposing party makes a showing of undue delay, bad faith, undue prejudice, or futility of amendment on the part of the moving party. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

### B. *Analysis*

#### 1. Defendant North American's Contentions Regarding Leave to File Counterclaim

Defendant North American requests leave of this Court to file counterclaims against Plaintiffs due to Defendant North American's previous failure to include any allegations with its Answer, filed on February 20, 2003. Federal Rule of Civil Procedure § 13(f) states that "[w]here a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of the Court set up the counterclaim by amendment." Fed.R.Civ.P. 13(f). Defendant North American notes that "[l]eave to add a compulsory counterclaim is normally freely granted so as to prevent a later plea of waiver or res judicata." *See T.J. Stevenson & Co. v. 81,193 Bags of Flour,* 629 F.2d 338 (5th Cir.1980).

Defendant North American states that it inadvertently failed to disclose that it had received a California state trademark registration, as well as other state trademark registrations, for its "Pitbull" mark. (Motion, 4:14–16). At the time Defendant North American was required to respond to Plaintiffs' Complaint, Defendant North American states that it neglected to consider the effect of the state trademarks with regard to Plaintiffs' USPTO application for its "Pit Bull" mark, and the subsequent Claim for Damages filed against Defendants. *(Id.,* 4:16–19). Defendant North American attributes its oversight, in part, to its belief that Defendant RIC was properly defending its interests being concurrently prosecuted in the USPTO. *(Id.,* 4:19–21).

With regard to the extent of the delay which may be caused by granting leave, Defendant North American contends that formal discovery has not yet commenced, thus precluding Plaintiffs from being prejudiced by the filing of its counterclaims. *(Id.,* 4:22–23). Further, Defendant North American argues that its claims against Plaintiffs arise from its first use of the "Pitbull" mark in commerce, as evidenced by the twenty state trademark registrations it possesses, and the fourteen state trademark registrations that are currently pending. *(Id.,* 4:24–26). Accordingly, Defendant North American argues that justice requires that this Court grant leave for Defendant North American to file its counterclaims to prevent Plaintiffs from

claiming waiver and/or res judicata in any subsequent Claim for Damages Defendant North American brings against Plaintiffs. (*Id.*, 5:1–3).

### 2. Defendant North American's Motion For Leave of the Court to File Counterclaim is Granted

 Plaintiffs respond to Defendant North American's Motion for Leave by arguing the following: (a) because Plaintiffs were the first to use "Pit Bull" as the trademark of its energy drink, Defendant North American cannot successfully state a claim for trademark infringement or unfair competition; (b) because most, if not all, of Defendant North American's state trademark registrations have been obtained by fraud, Defendant North American cannot successfully state a claim for trademark or unfair competition; (c) Defendant North American's claim for unfair competition under Business & Professions Code § 17200 is barred by the holding of the California Supreme Court in *Korea Supply Co. v. Lockheed Martin, Corp.*, 29 Cal.4th 1134, 1150–51, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003); (d) because Defendant North American failed to fully comply with its disclosure obligations under Rule 26, it should not be granted leave to file its proposed counterclaim; (e) because the discovery cut-off date is rapidly approaching, Plaintiffs will be prejudiced if Defendant North American is permitted to file its untimely counterclaim; and (f) Defendant North American's motion should be denied because Defendant North American's counterclaim seeks to add Bob Solomon as a new party cross-defendant, and Mr. Solomon has not appeared in this action. (*See* Opposition, 2–9).

As is explained below, this Court has considered Plaintiffs' arguments, and this Court finds that Defendant North American should be granted leave to file a counterclaim and third party complaint. In determining whether to grant Defendant North American leave, this Court considered those factors relevant to Defendant North American's Motion for Leave, namely whether there has been a showing of undue delay, bad faith, undue prejudice, or futility of amendment on the part of the moving party. *Foman*, 371 U.S. at 182, 83 S.Ct. 227. Accordingly, Defendant North American is granted leave of this Court to file additional pleadings consistent with this Order. The real issue in this case is who has established the first right to use the name "Pitbull."

#### a. Defendant North American's Motion For Leave Is Not Precluded By Undue Delay

To show "undue delay," the opposing party must at least show delay past the point of initiation of discovery; even after that time, courts will permit amendment provided the moving party has a reasonable explanation for the delay. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185, 187 (9th Cir. 1987). In the present case, Defendant North American filed its Answer to Plaintiff's Unverified First Amended Complaint on February 20, 2003. At the June 16, 2003 Scheduling Conference, this Court set a Discovery Cutoff date for December 12, 2003. Defendant North American waited seven months to request leave of this Court to amend its Answer to include additional pleadings, and, according to Plaintiffs, Defendant North American's current request is untimely as it is being made less than two month before the discovery cut-off date. (Opposition, 1:25–26, 2:23–24).

Defendant North American attributes the delay in filing its additional pleadings to inadvertence in considering the effect of its state trademark registrations on Plaintiffs' USPTO application for its "Pit Bull" mark, and the subsequent Claim for Damages filed against Defendants. (Motion, 4:14–19). Additionally, Defendant North American ascribes its oversight, in part, to a belief that Defendant RIC was properly defending its interest being concurrently prosecuted in the USPTO. (*Id.*, 4:19–21). In light of Defendant North American's interesting revelations and representations, this Court finds Defendant North American's explanation to be surprisingly satisfactory. Plaintiffs have not presented any evidence, at this time, which would indicate that Defendant North American possessed a wrongful motive in failing to assert its affirmative claims until

now. In addition, the Ninth Circuit has found that delay alone is not sufficient to justify the denial of a motion requesting leave to amend. *Hurn v. Retirement Fund Trust of Plumbing,* 648 F.2d 1252, 1254 (9th Cir.1981).

### b. Defendant North American's Motion For Leave Is Not Precluded By Bad Faith

Courts have understood "bad faith" to mean such tactics as, for example, seeking to add a defendant merely to destroy diversity jurisdiction. *Sorosky v. Burroughs Corp.,* 826 F.2d 794, 805 (9th Cir.1987). Defendant North American's proposed claims include claims for trademark infringement pursuant to the Lanham Act § 43, common law unfair competition, statutory unfair competition pursuant to California Business & Professions Code § 17200, and declaratory relief. (*See* Motion, Ech. A). In addition, Defendant North American seeks to add as a third party defendant Bob Solomon, an adult individual who is allegedly residing in Los Angeles County, California. (*Id.*). Plaintiffs have not alleged that Defendant North American is seeking to file its claims and add Mr. Solomon as a third party defendant in an effort to tamper with this Court's jurisdiction. Neither have Plaintiffs alleged that Defendant North American's current request is made for the purposes of delay or other impermissible tactics. Accordingly, this Court finds that Defendant North American's Motion for Leave is not precluded by bad faith.

### c. Defendant North American's Motion For Leave Will Not Create Undue Prejudice Against Plaintiffs

"Undue prejudice" means substantial prejudice or substantial negative effect; the Ninth Circuit has found such substantial prejudice where the claims sought to be added "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense." *Morongo*

*Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990). With regard to whether the proposed claims would substantially alter this litigation, Plaintiffs argue that the proposed affirmative claims will introduce "a whole host of additional issues" into this action. (Opposition, 8:28). However, the issues contained in Defendant North American's proposed claims are substantially related to the issues contained in Plaintiffs' Complaint. Both Plaintiffs and Defendant North American are asserting a first use proprietary interest in, what the parties describe as, confusingly similar marks, and both parties are claiming their proprietary interest to have been infringed by the opposing party. In addition, the three causes of action being asserted by Plaintiffs and those proposed by Defendant North American are the same, namely trademark infringement pursuant to the Lanham Act, common law unfair competition and statutory unfair competition pursuant to the California Business and Professions Code. Thus, the scope of this litigation will not be greatly altered by the filing of the proposed claims so as to create an undue prejudice to Plaintiffs.

Plaintiffs argue that the timing of Defendant North American's Motion for Leave creates undue prejudice with respect to the December 12, 2003 discovery cut-off date. (Opposition, 8:12–15). However, Defendant North American's Motion for Leave is not an "eleventh hour" action; the discovery cut-off date is two months away, and this Court doubts that the addition of these proposed claims will greatly alter the nature of the discovery.[1] While this Court acknowledges that the parties' respective discovery plans may require a slight adjustment in light of the proposed counterclaims, the affect of Defendant North American's Motion for Leave on the discovery does not constitute unfair prejudice.

### d. Defendant North American's Motion For Leave Is Not Precluded By the Futility of the Amendment

An amendment is "futile" only if it would clearly be subject to dismissal. *See DCD*

---

1. Furthermore, the parties are free to stipulate and request to this Court an alteration to the discovery schedule if they believe it to be appropriate.

*Programs, Ltd.,* 833 F.2d at 188. While courts will determine the legal sufficiency of a propose amendment using the same standard as applied on a Rule 12(b)(6) motion, *see Miller v. Rykoff–Sexton, Inc.* 845 F.2d 209, 214 (9th Cir.1988), such issues are often more appropriately raised in a motion to dismiss rather than in an opposition to a motion for leave to amend. William W. Schnauzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial* § 8:422. As stated above, Plaintiffs make the following arguments which are construed by this Court to be futility arguments: (a) because Plaintiffs were the first to use "Pit Bull" as the trademark of its energy drink, Defendant North American cannot successfully state a claim for trademark infringement or unfair competition; (b) because most, if not all, of Defendant North American's state trademark registrations have been obtained by fraud, Defendant North American cannot successfully state a claim for trademark or unfair competition; and (c) Defendant North American's claim for unfair competition under Business & Professions Code § 17200 is barred by the holding of the California Supreme Court in *Korea Supply Co. v. Lockheed Martin, Corp.,* 29 Cal.4th 1134, 1150–51, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003). (*See* Opposition, 2–9).

Plaintiffs first futility argument states that Defendant North American will not be able to successfully state claims for trademark infringement or unfair competition due to the fact that Defendant North American did not commence using its "Pit Bull" mark until 1998, nearly three years after Plaintiffs commenced using their "Pit Bull Energy Mark" mark in 1995. (Opposition, 3:21–25). However, Plaintiffs concede that Defendant RIC, who has granted its interest in the "Pit Bull" mark to Defendant North American, filed a trademark application with the USPTO a month before Plaintiffs filed a similar application. (*Id.,* 4, AN 2). Plaintiffs argue, though, that Defendant RIC's application will be shortly dismissed, thereby precluding Defendant North American's proposed claims. These arguments directly address the merits of the claims for trademark infringement and unfair competition. This Court cannot find

at this time that these asserted claims are "clearly subject to dismissal."

Plaintiffs' second argument also fails to establish, at this point, that Defendant North American's proposed claims are futile. Plaintiffs assert that Defendant North American represented to the various state trademark offices that no one else had a right to use the "Pitbull" mark, or any variant thereof. (*Id.,* 5–6). Plaintiffs argue that Defendant North American was on notice, be it constructive or express, of Plaintiffs' trademark filing, and thus Defendant North American's registrations are void as being obtained by fraud. (*Id.*). This Court cannot currently determine whether Defendant North American obtained its state trademark registrations by fraud because it would improperly require this Court to go beyond the pleadings.

Plaintiffs final futility argument is that Defendant North American's proposed claim for statutory unfair competition pursuant to § 17200 is barred by the California Supreme Court's holding in *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1150–51, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003). According to *Korea Supply,* relief under Section 17200 is limited to restitution and injunctive relief, and damages are not recoverable. *See Korea Supply,* 29 Cal.4th at 1150–51, 131 Cal.Rptr.2d 29, 63 P.3d 937. Plaintiffs argue that Defendant North American seeks to recover damages under its claim for statutory unfair competition, thus making this claim for relief futile. This Court agrees that damages are not recoverable under Section 17200, but it does not appear that Defendant is seeking damages for this claim. According to the proposed Third Claim for Relief, Defendant North American alleges that "as a direct, proximate, and foreseeable result of Counter–Defendants' [and Cross–Defendant's] conduct, Counter–Claimants have been substantially damaged according to proof at trial." (Motion, Exh. A, ¶ 59). Defendant North American, by that allegation, is not requesting damages, but rather is merely asserting that Plaintiffs' conduct has caused substantial damage. Defendant North American subsequently requests in its Prayer that Plaintiffs "be preliminarily and

permanently enjoined from continuing to use the 'Pit Bull Energy Drink' mark...." (*Id.*, Exh. A, 10:23–26). Accordingly, Defendant North American's Third Claim for Relief is not subject to dismissal at this time for violating the holding of *Korea Supply,* and this Court is precluded from finding that the proposed counterclaim would be futile.

Consistent with the foregoing, this Court finds that Defendant North American should not be barred from filing its proposed counterclaims and third party complaint on the bases of undue delay, bad faith, unfair prejudice and the futility of the amendment.

## III. CONCLUSION

This Court *grants* Defendant North American's Motion for Leave of the Court to file Counterclaim and Third Party Complaint. Defendant North American is ordered to file and serve the Counterclaim and Third Party Complaint consistent with this Order within seven days of the date of this Order.[2]

IT IS SO ORDERED.

---

**2.** On September 16, 2003, the law firm of Passman & Cohen lodged a (Proposed) Order referring to itself as "Attorneys to Plaintiff, North American Beverage Company, Inc." Counsel should be able to accurately identify the party or parties they represent as well as the appropriate pleading to be used.